**David M. SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–86–158–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 26, 1986.

Lawrence P. Gwin, Jr., Bay City, for appellant.

Daniel Shindler, Dist. Atty., Bay City, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

The offense is murder, and the punishment assessed is forty-five years' imprisonment. Appellant requested the submission of instructions on involuntary manslaughter and criminally negligent homicide in the charge to the jury. His request was denied, and he now asserts error. We reverse.

The record reflects that, on July 28, 1985, appellant shot and killed Dondie Michelle Boone, his fourteen-year-old stepdaughter, and her mother, Carolyn Smith, appellant's wife. This appeal stems only from his conviction in connection with Dondie Boone's death. Appellant and Carolyn were married on September 4, 1984, and had been living in the Fort Worth area. Dondie lived with the couple. There is evidence of domestic violence in the family prior to this incident.

Sometime before the shootings, Carolyn left appellant and she and Dondie moved to Palacios, Texas; to "start a new life away from [appellant]" and to be near her family. According to appellant, he and Carolyn reconciled and agreed that he would join Carolyn and Dondie in Palacios. Early Saturday, July 27, 1985, appellant moved the family's belongings to Palacios, to a house Carolyn had rented. The family was in the process of unpacking.

Saturday evening, appellant went to where Carolyn worked as a cocktail waitress in a local bar. He became annoyed when Carolyn began talking with a man named Pete. He later talked with Pete, and Pete (unaware who appellant was) told appellant that he had dated Carolyn. Upon returning home at 2:00 a.m., the couple got into an argument. Carolyn told appellant that she was leaving him and went into the bedroom and got her purse and car keys. When she again told appellant that she was leaving him, and he replied, "No, you are not." Appellant was standing in the bedroom doorway and would not let Carolyn pass. She hit him in the head with her purse, knocking his glasses off his face. Appellant testified, "there was a gun laying right there and I picked it up and I said, 'You are not leaving this time....'" She—I don't know. We had a conversation and—I shot her."

Appellant then saw Dondie in the adjacent living room. He testified:

A: She had a very light scream and I said, "Dondie, please go back in your room."

I pulled the gun—I wasn't shooting at her. I thought I was shooting the stereo.

Q: Where was the stereo?

A: Right there between the door and that wall in her bedroom.

Q: Between the door and wall—

A: —No, this one, the other wall, outside wall (indicating).

\* \* \* \* \* \*

Q: At that instant, did you think that you had hit Dondie?

A: No, I did not.

\* \* \* \* \* \*

I went inside the bedroom and picked up my glasses, got my shirt.

\* \* \* \* \* \*

A: I was going to go out of the house and I seen Dondie laying there and I couldn't believe she was laying there.

Q: Is there any doubt in your mind that when you pulled that trigger and fired it off into the living room that that was an accident?

A: What do you mean?

Q: Well, you didn't intend to shoot Dondie, did you?

Q: No. I didn't even intend to shoot Carolyn.

\* \* \* \* \* \*

[Cross-examination] A: I don't know where she [Dondie] was going. I just wanted her to go back into the bedroom.

\* \* \* \* \* \*

Q: What was she doing?

A: She was just walking out of her bedroom. I asked her to go back to her bedroom, please.

Q: Did she know that you just killed her mother?

A: I—I don't know. She—I guess she heard the gunshot go off.

Q: I would think she probably was screaming?

A: Yes, she was screaming. She had a very short scream.

Appellant then left the house and drove to a phone booth and called an ambulance. He was somehow connected with the police department, and he reported that he had shot his wife and needed an ambulance. He waited at the phone booth until the police arrived. He then surrendered his weapon and admitted shooting both victims. When the police arrived at the house, the front door was open and Dondie's body was lying just inside the front doorway.

█ A charge on a lesser included offense must be given if the requested charge is necessarily included within the proof required to establish the offense charged, and there is some evidence that, if the accused is guilty, he is guilty only of the lesser included offense. *Thomas v. State*, 699 S.W.2d 845, 847 (Tex.Crim.App. 1985); *Salinas v. State*, 644 S.W.2d 744, 745 (Tex.Crim.App.1983). Involuntary manslaughter and criminally negligent homicide are both lesser included offenses of murder. *Goodwin v. State*, 694 S.W.2d 19, 27 (Tex.App.—Corpus Christi 1985, pet. ref'd); *see also Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984).

█ Involuntary manslaughter is defined in Tex.Pen.Code Ann. § 19.05(a)(1) (Vernon 1974),[1] as recklessly causing the death of an individual. "Recklessness" is defined in Section 6.03(c) as being aware of, but consciously disregarding, a substantial and unjustifiable risk of harm or death. Criminally negligent homicide is defined in Section 19.07(a) as causing the death of an individual by criminal negligence. Under Section 6.03(d), one acts with criminal negligence if one ought to be, but is not, aware of the risk one's conduct creates. The difference between these two offenses is one of degree. The essence of recklessness is the conscious disregard of a perceived risk, while the essence of criminal negligence is the failure to perceive the risk. *Moore v. State*, 574 S.W.2d 122, 123 (Tex.Crim.App. 1978).

█ In determining whether appellant's requested charges should have been given, we are governed by the rule that, if evidence from any source raises an issue of

---

1. All statutory citations are to Tex.Pen.Code Ann. (Vernon 1974).

whether a lesser included offense may have been committed, that issue *must* be submitted to the jury. *Thomas,* 699 S.W.2d at 849; *Branham v. State,* 583 S.W.2d 782, 784 (Tex.Crim.App.1979). The credibility of such evidence and whether it conflicts with other evidence in the record is irrelevant to our consideration. Moreover, the issue may be raised on the basis of the accused's own testimony. *Hunter v. State,* 647 S.W.2d 657, 658 (Tex.Crim.App. 1983).

■ Here, appellant testified that he did not intend to shoot Dondie; that he did not shoot at her, but was shooting at the stereo; and that he was initially unaware she had been shot. The record is unclear, but there is testimony that the stereo was located on the front exterior wall near the front door. Appellant also testified that he had never fired a pistol before, but had previously fired "guns." He admitted he owned a 30/30 that his father had given him, but had not fired it since "the mid 70's." He testified his brother had given him the pistol used in the shootings about the time Carolyn moved to Palacios, and that the shells were "already in there." Considering the fact that appellant had just shot Carolyn only seconds before he fired into the living room, it can reasonably be inferred that he knew the pistol was loaded. *See Borns v. State,* 674 S.W.2d 879, 883–84 (Tex.App.—Dallas 1984, no pet.). When asked whether he knew that pointing a loaded gun at someone could kill them, he responded, "I did not know that it could kill somebody like that."

The question before us is whether this evidence raises the issue that a lesser included offense may have been committed. All of the circumstances regarding the accused's mental state and awareness of the risk of harm or death must be collectively examined in light of the definition of the lesser included offense(s). *Thomas,* 699 S.W.2d at 850, 851.

In *Salinas v. State,* 644 S.W.2d 744, the accused challenged his murder conviction because of a refusal to charge on involuntary manslaughter. The defendant had a loaded, cocked gun in his hand and made two men lie on the floor as he exited an apartment. As the defendant reached for the doorknob, "he was barely touching the trigger ... and was not aiming the gun at anyone, and the gun accidentally discharged." He stated he did not intentionally pull the trigger and did not even know the deceased had been shot. The Court in that case presumed the accused was aware of the risk because he exhibited a loaded, cocked pistol, even though he was specifically unaware of the shooting at the time. Thus, the Court held that his conduct was reckless and a charge on involuntary manslaughter should have been given. Criminally negligent homicide was not at issue in that case.

In *Hunter v. State,* 647 S.W.2d 657, the defendant appealed his murder conviction because of the failure to submit both involuntary manslaughter and criminally negligent homicide issues to the jury. In that case, the shooting occurred in a car with the defendant in the front seat and the victim in the back seat. The defendant swung his arm to the back seat to "hush her" and somehow the gun went off. He testified he had never fired that gun before, did not know if it was cocked, did not pull the trigger, did not point the gun at her and was "looking ahead" at the time. The Court held that the evidence raised the issue of criminally negligent homicide (i.e., whether the defendant was negligent in not perceiving the risk), because he did not intend to shoot, did not know why the gun went off, but did aim in the general vicinity of the victim. Since there was no evidence that the defendant was aware of the risk, involuntary manslaughter was not raised.

The Court of Criminal Appeals noted in *Thomas,* 699 S.W.2d 845, that evidence which shows a defendant knows a gun is loaded, is familiar with guns, and points a gun at another tends to raise the awareness issue. However, evidence which shows an accidental discharge, and that the defendant was not familiar with guns and thought the gun was unloaded tends to raise the unawareness issue. The evidence in the case at bar indicates appellant knew

the gun was loaded, and was generally familiar with guns but unfamiliar with pistols. He testified he did not intend to kill Dondie, did not point and shoot the gun at her, only in her general vicinity, and he did not have his glasses on at the time.

Because we are constrained not to consider the credibility of this evidence, we find that it is sufficient to raise the issue of whether a lesser included offense may have been committed. While we consider the evidence to more precisely raise the issue of awareness, and thus, involuntary manslaughter, we also find there was some evidence to put both mental states in issue. Where the evidence raises both inferences, the jury should have been instructed accordingly. *Thomas,* 699 S.W.2d at 851; *see also Lugo,* 667 S.W.2d at 148; *Schoelman v. State,* 644 S.W.2d 727, 734 (Tex.Crim. App.1983).

Appellant also contends the trial court committed fundamental reversible error by incorrectly charging the jury on the State's burden to disprove the elements of sudden passion as an element of the offense of murder. We need not reach this ground of error. Tex.R.App.P. 90. However, in view of a new trial, we direct the State to *Cobarrubio v. State,* 675 S.W.2d 749, 751–52 n. 8 (Tex.Crim.App.1983).

The judgment of the trial court is reversed, and the cause is remanded.