# PD-0663-15

PD-0663-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/29/2015 3:57:17 PM
Accepted 6/1/2015 3:18:43 PM
ABEL ACOSTA
CLERK

No. 13-13-00319-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JOSE MACIAS,                                                             Appellant

v.

THE STATE OF TEXAS,                                                     Appellee

Appeal from Nueces County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

June 1, 2015

ABEL ACOSTA, CLERK

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Jose Macias.

*The case was tried before the Honorable Jose Longoria, 214th Judicial District Court of Nueces County, Texas.

*Counsel for Appellant at trial was Reynaldo Pena, Pena & Grillo, PLLC, 1240 Third Street, Corpus Christi, Texas 78404-2314, and Steve Schiwetz, Law Offices of Steve Schiwetz, P.O. Box 2581, Corpus Christi, Texas 78403-2581.

*Counsel for Appellant on appeal was Danice L. Obregon, 802 N. Carancahua, Suite 2100, Corpus Christi, Texas 78401.

*Counsel for the State at trial was William Patrick Delgado and William Reagan Ainsworth, Assistant District Attorneys, 901 Leopard, Room 206, Corpus Christi, Texas 78401.

*Counsel for the State on appeal was Douglas K. Norman, Assistant District Attorney, 105th Judicial District of Texas, 901 Leopard, Room 206, Corpus Christi, Texas 78401, and John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **1.**     **Does the plain language of Texas Penal Code section 9.31(a), the self-defense statute, provide for the justified use of force against another who does not use or attempt to use unlawful force?**

    **2.**     **Under what circumstances, if any, is an actor justified in killing someone he does not know is there?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *The holding ignores the statutes' plain language.* . . . . . . . . . . . . . . . . . . . . . 4
    *The victim was not a party to anything.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *Justifications no longer transfer with intent.* . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A policy favoring entitlement should not trump a statutory limitation.* . . . . . 7

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

APPENDIX
    Opinion of the Court of Appeals

# INDEX OF AUTHORITIES

**Cases**

*Alonzo v. State*, 353 S.W.3d 778 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . 7

*Banks v. State*, 955 S.W.2d 116 (Tex. App.–Fort Worth 1997, no pet.). . . . . . . . 6

*Black v. State*, 145 S.W. 944 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brunson v. State*, 764 S.W.2d 888 (Tex. App.–Austin 1989, pet. ref'd). . . . . . . . 6

*Caraway v. State*, 263 S.W. 1063 (Tex. Crim. App. 1923). . . . . . . . . . . . . . . . . . 6

*Dickey v. State*, 22 S.W.3d 490 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . 5, 6

*Dugar v. State*, __S.W.3d__, 2015 Tex. App. LEXIS 3519 (Tex. App.–Houston [14th Dist.] 2015, pet. filed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Echavarria v. State*, 362 S.W.3d 148 (Tex. App.–San Antonio 2011, pet. ref'd). . 6

*Giesberg v. State*, 984 S.W.2d 245 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . 5

*Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . 6

*Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319 (Tex. App.–Corpus Christi Mar. 12, 2015, r'hng denied). . . . . . . . . . . *passim*

*Sanders v. State*, 632 S.W.2d 346 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . 5

**Statutes and Rules**

TEX. PENAL CODE § 9.05. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

TEX. PENAL CODE § 9.31(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. PENAL CODE § 9.32(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. PENAL CODE § 9.32(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. PENAL CODE § 9.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. APP. P. 47.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. R. APP. P. 66.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other**

S. Searcy and J. Patterson, Practice Commentary to Texas Penal Code (1974). . . . 7

No. 13-13-00319-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JOSE MACIAS,                                                                        Appellant

v.

THE STATE OF TEXAS,                                                              Appellee


\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. Entitlement to self-defense is a recurring issue of great importance, and this Court has yet to address many of the underlying issues in cases in which the victim's presence was unknown to the defendant. These issues, such as the statutory basis for the multiple assailants instruction and Tᴇх.

1

PENAL CODE § 9.05's limitation on the availability of self-defense,[1] deserve an open conversation.

## STATEMENT OF THE CASE

Appellant was convicted of murder and sentenced to 50 years in prison. The court of appeals reversed, holding that the self-defense instructions submitted were erroneously limited to the apparent use of force by the victim, whom neither the defendant nor his associate knew was there.

## STATEMENT OF PROCEDURAL HISTORY

On March 18, 2015, the court of appeals reversed appellant's conviction in an unpublished opinion.[2] The State's motion to publish was denied on April 2, 2015. After requesting briefing from appellant, the State's motion for rehearing was denied without opinion on April 29, 2015. The State's petition is due on May 29, 2015.

## GROUNDS FOR REVIEW

1.  **Does the plain language of Texas Penal Code section 9.31(a), the self-defense statute, provide for the justified use of force against another who does not use or attempt to use unlawful force?**

2.  **Under what circumstances, if any, is an actor justified in killing someone he does not know is there?**

---

[1]    The latter issue is the focus of a recently filed petition. *See* PD-0485-15, *Dugar v. State*, __S.W.3d__, 2015 Tex. App. LEXIS 3519 (Tex. App.–Houston [14th Dist.] 2015, pet. filed 5-1-15).

[2]    *Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319 (Tex. App.–Corpus Christi Mar. 12, 2015, r'hng denied) (not designated for publication).

## ARGUMENT AND AUTHORITIES

Casimiro Guerra was in the backseat of a car that appellant and his friend, Alejandro Aparicio, approached to buy drugs.[3] After Aparicio tendered the money, he yelled out that there was a gun.[4] As the car pulled away, appellant fired a single shot that killed Guerra.[5] There was no evidence that appellant or Aparicio knew he was there.[6]

Appellant received instructions on self-defense and defense of a third person. He objected, however, because the instructions limited his reasonable belief to the need to protect against the victim's threatened unlawful deadly force.[7] The trial court overruled the objection because the instructions, as given, "track[] the law better."[8] The court of appeals disagreed, concluding that "such defensive issues—as instructed—were not raised by the evidence[,]" and holding that a proper instruction "would include [the driver and/or passenger's] name, and not Guerra's, as the

---

[3]   Slip op. at 2.

[4]   Slip op. at 2.

[5]   Slip op. at 3.

[6]   Slip op. at 12 ("Aparicio testified that he saw only Mondragon and Martinez in the vehicle that evening.  Furthermore, aside from acknowledging that he was present in the back seat of the vehicle, neither Mondragon nor Martinez testified that Guerra participated in the drug deal, spoke to Aparicio or Macias, or even made his presence known during the transaction.").

[7]   1 CR 379-81, 384-85. *See* 7 RR 82 ("[W]e would object to . . . any . . . mention of [Guerra's] name, because nobody is saying that Casimiro Guerra is the person that caused Mr. Macias or even Mr. Aparicio to react because they had a gun.  It was another person.").

[8]   7 RR 83.

3

aggressor."[9]  Under what theory would an actor be justified in murdering a victim he did not know was present based on someone else's use or attempted use of unlawful force?

*The holding ignores the statutes' plain language*

The plain language of the applicable statutes does not support the court of appeals's conclusion. Penal Code section 9.31 states, "[A] person is justified in using force against *another* when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against *the other's* use or attempted use of unlawful force."[10]  Similar language is used in sections 9.32 and 9.33.[11]  As the court of appeals observed, "The language of these provisions logically implies that 'the other' who uses or attempts to use unlawful force as indicated in subsection (a) of section 9.31 is 'the person against whom the force was used.' . . . Applied to this case, 'the other' would be the victim, Casimiro Guerra."[12]  But the court ignored its

---

[9]  Slip op. at 12-13.

[10]  TEX. PENAL CODE § 9.31(a) (emphasis added).

[11]  TEX. PENAL CODE § 9.32(a) ("A person is justified in using deadly force against *another*: (1) if the actor would be justified in using force against *the other* under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against *the other's* use or attempted use of unlawful deadly force . . . ."); TEX. PENAL CODE § 9.33 ("A person is justified in using force or deadly force against *another* to protect a third person if . . . ."). Additionally, the presumption of reasonableness of the actor's belief is based, in part, on the actor's knowledge or reason to believe "that the person against whom" the force or deadly force was used was doing one or more enumerated acts.  TEX. PENAL CODE §§ 9.31(a)(1), 9.32(b)(1).

[12]  Slip op. at 12 (quoting § 9.31(a)(1)).

own reasoning. Moreover, it did so without any explanation except to say that appellant requested "proper defensive theories that were raised by the evidence."[13] There are a number of conceivable explanations, all of which raise more questions than answers.

*The victim was not a party to anything*

Is this an unspoken, novel application of the "multiple assailants" instruction? There is no statute providing for such an instruction,[14] but this Court explained over 100 years ago that an actor is justified in killing people who are "present at the time the difficulty is begun and in any way are encouraging, aiding or advising the real assaulting party *and it so appears to the accused*[,]" or "*if it reasonably appeared to him that they were present* for the purpose of acting together to take his life or do him some serious bodily injury."[15] In other words, "The rule concerning multiple assailants is essentially an application of the law of parties to the defendant's

---

[13]   Slip op. at 18.

[14]   *See Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998) (because "the authority to establish what constitutes a defense rests solely with the Legislature, . . . a defense which is not recognized by the Legislature as either a defense or as an affirmative defense does not warrant a separate instruction[,]" "and would therefore constitute an improper comment on the weight of the evidence."). The last published case from this Court to mention the instruction, *Dickey v. State*, 22 S.W.3d 490 (Tex. Crim. App. 1999), was decided in the court of appeals shortly after *Giesberg* but this Court's opinion only reviewed the harm analysis.

[15]   *Black v. State*, 145 S.W. 944, 947 (1912) (citations omitted) (emphasis added). *Black* presents "a detailed explanation of the rationale behind such a multiple assailant charge." *Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. 1982).

5

assailants."[16] It is axiomatic that mere presence at the scene of a crime is insufficient to support a conviction as a party to the offense.[17] Even had appellant seen him, there is no evidence that the victim did anything other than be present and get killed. There is no evidence he was a party to anything.

*Justifications no longer transfer with intent*

Is this a silent transfer of justification along with transferred intent? For the majority of the last century, if a defendant, in firing at A, was justified under the law of self-defense, the fact that the shot intended for A killed the B constituted no offense.[18] But no modern court has held that any defense that might be applicable against the intended target applies wholesale regardless of who is harmed. The former practice, which one court has called a "'transferred justification' corollary to the transferred intent doctrine,"[19] "is no longer Texas law."[20] In its place, section 9.05 provides:

> Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills

---

[16]   *Dickey*, 22 S.W.3d at 493 (Keller, PJ., concurring). Numerous courts of appeals have cited Presiding Judge Keller's explanation of the multiple assailants instruction. *See*, *e.g.*, *Dugar*, 2015 Tex. App. LEXIS 3519 at *12; *Echavarria v. State*, 362 S.W.3d 148, 152 (Tex. App.–San Antonio 2011, pet. ref'd).

[17]   *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).

[18]   *See Caraway v. State*, 263 S.W. 1063, 1064 (Tex. Crim. App. 1923).

[19]   *Brunson v. State*, 764 S.W.2d 888, 891 (Tex. App.–Austin 1989, pet. ref'd).

[20]   *Banks v. State*, 955 S.W.2d 116, 118 (Tex. App.–Fort Worth 1997, no pet.).

6

an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

As per the Practice Commentary, "Section 9.05 alters prior Texas law, represented by the *Caraway* case, by measuring the actor's culpability independently as to each of his victims, whether intended or unintended."[21] Therefore, it is no longer enough to assume justification based on the alleged conduct of the driver or passenger. And, as with a multiple assailants instruction, it is impossible to conclude on this record that the victim was anything other than an innocent third person.

*A policy favoring entitlement should not trump a statutory limitation*

Is this an implicit extension of *Alonzo v. State*, which held, "If the actor reasonably believed that the force was necessary to protect himself against another's unlawful use of force, and the amount of force actually used was permitted by the circumstances, Sections 9.31 and 9.32 apply, regardless the actual result of the force used."[22] Unlike *Alonzo*, the different "result" in this case was the victim, not the injury.[23] But, like Alonzo, appellant also received an instruction on manslaughter and argued it was an accident.[24] Is the quoted language broad enough to provide a

---

[21] S. Searcy and J. Patterson, Practice Commentary to Tex. Penal Code § 9.05 (1974).

[22] *Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011).

[23] *Id*. at 779 (Alonzo said he unintentionally killed a man in prison who attacked him with a metal spike).

[24] 1 CR 376; 8 RR 30 ("Nobody here's saying Mr. Guerra should have been shot, but some things are accidents."), 43 ("If you're shooting into the back seat -- if you're shooting into the back seat and you don't know anybody's there, that's reckless.").

7

defense to murder in this case, section 9.05 notwithstanding?[25]

*Conclusion*

The court of appeals ignored its own reading of the plain language of the statutes to accommodate appellant's defensive theory without any apparent basis in law. In a way, it has disagreed with itself on a material question of law necessary to its decision on an important question of state law that has not been, but should be, settled by this Court.[26] And by declining to offer an explanation, even when these specific issues were raised on rehearing, the court of appeals has so far departed from the usual and accepted course of judicial proceedings as to call for an exercise of this Court's power of supervision.[27]

---

[25] The court of appeals considered the omission of a section 9.05 instruction as part of the error and, apparently, a contributor to harm. Slip op. at 13, 18.

[26] TEX. R. APP. P. 66.3(b), (e).

[27] TEX. R. APP. P. 66.3(f); *see* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, and that the decision of the Court of Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

  /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 2,843 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of May, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Douglas K. Norman
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
douglas.norman@co.nueces.tx.us

Danice L. Obregon
Attorney at Law
802 N. Carancahua, Suite 2100
Corpus Christi, TX 78401
danice@obregonlaw.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**APPENDIX**



**NUMBER 13-13-00319-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

JOSE MACIAS,                                                                Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

---

**On appeal from the 214th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Benavides**

By three issues, appellant Jose Macias appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b) (West, Westlaw through 2013 3d C.S.). Macias asserts that the trial court reversibly erred by: (1) admitting extraneous-offense evidence during the guilt-innocence phase of his trial; (2) refusing to submit a jury charge instruction on criminally negligent homicide; and (3) denying

Macias's request to properly instruct the jury on self-defense and defense of a third party. We reverse and remand.

## I.   BACKGROUND

A Nueces County grand jury indicted Macias for the 2012 murder of twenty-one-year-old Casimiro Guerra III. Macias pleaded not guilty and was tried before a jury. The record reveals the following:

On the evening of November 18, 2012, Alejandro Aparicio and Macias traveled to a Stripes convenience store located at the corner of Ayers and Bevecrest in Corpus Christi to purchase one ounce of marijuana from Homer Martinez. The record is clear that Macias initiated the deal with Martinez by calling him on the telephone. According to Aparicio, when he and Macias arrived at the Stripes, they entered the store to purchase a drink. A short time later, Aparicio and Macias exited the store to meet Martinez, who was seated in the front-passenger seat of a Dodge vehicle parked next to the store's gas pumps. Jose Mondragon accompanied Martinez and sat in the driver's seat, while Guerra sat in the rear-passenger-driver's-side seat.

Aparicio approached the vehicle and spoke to Martinez while Macias stood in front of the driver's side of the vehicle as a "look out." Aparicio acknowledged that he only saw Martinez and Mondragon inside of the vehicle that night. Aparicio testified that he gave Martinez three hundred dollars in exchange for an ounce of marijuana and that he observed a "black handgun" inside of the car. Aparicio stated that after he paid Martinez, Martinez was "fiddling" with Aparicio's money, and Aparicio told Macias that "something wasn't right." At that point, Aparicio told Macias: "What the fuck? Strap!"[1]

---

[1] Aparicio later clarified that "strap" referred to a gun.

2

and fell back, when the vehicle tried to "burn out" and leave the Stripes store. Aparicio heard a single gunshot as the vehicle drove away. Aparicio and Macias then fled the scene to Aparicio's home. Macias told Aparicio that the firing of the gun was an accident and that it "went off" as he was trying to pull the gun out. According to Aparicio, Macias told him that "he knew something was up with that guy."[2] After learning about Guerra's death the next day, Aparicio and Macias turned themselves into police.

Martinez testified that he had sold drugs to Macias in the past, including the night of November 18, 2012. Martinez corroborated several details from Aparicio's testimony, but contrary to Aparicio's assertion, Martinez testified that he did not possess a gun that night. Martinez claims that he and Aparicio completed the drug deal and then felt like "something [bad] was going to happen." Martinez stated that as Mondragon "drove off" after the drug deal, a shot was fired. Martinez testified that after the gunshot, Mondragon was "scared" and Guerra, who was in the back seat, said "I've been hit. I think I'm going to die." Martinez called 9-1-1, while Mondragon drove Guerra to the hospital.

Mondragon also testified and likewise corroborated much of Aparicio and Martinez's respective testimonies. However, Mondragon denied that anyone in the vehicle possessed a gun. Mondragon recalled that while Martinez was dealing the marijuana to Aparicio, Macias tried to open the driver's door of the vehicle and pointed a pistol at Mondragon's face. At that point, Mondragon drove away from the scene in his vehicle, and "within seconds" Mondragon heard a gunshot and a window shatter.

---

[2] Aparicio did not specify "that guy['s]" identity.

3

According to Mondragon, Guerra played no part in the drug deal, but was simply "going along for the ride."

Martinez and Mondragon each testified that they initially lied to the police and told detectives that Guerra's death was the result of a carjacking. Both said that they lied because they were "scared." The following night, however, Martinez and Mondragon came clean and told police about the drug deal. Mondragon told the jury that he "shouldn't have lied" to the police, but instead "should have told them the truth from the get-go. . . ." Macias did not testify.

The trial court also admitted surveillance video footage taken from different angles of the Stripes. A review of the video angle facing the fuel pumps depicts the Dodge vehicle pulling up to the pumps, and Aparicio and Macias approaching the vehicle a short time later. Aparicio walked to the front-passenger side of the vehicle, while Macias stood near the front driver's-side tire of the vehicle. Later, Macias walked toward the driver's side of the vehicle, but is hidden by the gas pumps. The Dodge then drove away, and Macias fired his gun at the vehicle. Macias and Aparicio ran away from the scene after the shooting.

Daniel Roberts, M.D., testified that he treated Guerra at Memorial Hospital that night. According to Dr. Roberts, Guerra was dead on arrival and had a gunshot wound to his left shoulder down toward his heart. Nueces County medical examiner Ray Fernandez, M.D. testified that he later performed an autopsy of Guerra's body and opined that Guerra's cause of death was a gunshot wound to the chest by homicide.

The jury found Macias guilty of murder, *see id.*, and assessed punishment at fifty years' imprisonment with the Texas Department of Criminal Justice's Institutional

4

Division. This appeal followed.

## II. JURY CHARGE INSTRUCTIONS

By his second and third issues, Macias asserts that the trial court reversibly erred by failing to instruct the jury on (1) the charge of criminally negligent homicide (second issue); and (2) self-defense and defense of a third party (third issue).[3] We address each in turn.

### A. Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* Preservation of charge error does not become an issue until we assess harm. *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

In assessing harm we first examine whether the defendant objected to the erroneous charge. *Id.* If the defendant did not object, "then he must show that the error was 'fundamental' and that he suffered 'egregious harm.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The appellant must show "actual, rather than theoretical, harm." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Some examples of egregious harm include those errors that "affect the very basis of the case," "deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.*

---

[3] Because we reverse and remand on these two issues, we decline to address Macias's first issue regarding the admission of extraneous acts and offenses because disposition of that issue would not provide Macias greater relief than a remand. *See* TEX. R. APP. P. 47.4.

5

(internal quotations and citation omitted). This particular standard is a "high and difficult standard which must be borne out of by the trial record." *Reeves*, 420 S.W.3d at 816.

If, however, the defendant properly objected, then he will obtain relief if the record shows that he suffered "some harm." *Id.* This standard requires us to consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors revealed by the record as a whole. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

## B. Criminally Negligent Homicide

Macias argues that the trial court erred by denying a jury-charge instruction for criminally negligent homicide because the evidence reveals that "Macias may not have known there was a back seat passenger at all." We disagree.

Upon the defendant's request, a lesser-included offense instruction shall be included in the jury charge if: (1) the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006).

In this case, the trial court instructed the jury on the offenses of murder and the lesser-included offense of manslaughter, but not on criminally negligent homicide, as Macias requested in a written motion and, again, orally during the charge conference.[4]

---

[4] We note that Macias's motion entitled "Defendant's Motion Request for Special Jury Instructions," requested the following instruction for criminally negligent homicide:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, JOSE ANGEL MACIAS, on or about November 18, 2012, in the County of Nueces, and State of Texas, as alleged in the indictment, did then and there cause the death of an individual, Casimiro Guerra, by criminal negligence, to wit: shooting Casimiro Guerra with a firearm, with the intent to

6

Criminally negligent homicide is a lesser-included offense of manslaughter, and likewise murder, because it includes all the elements of manslaughter except for manslaughter's higher culpable mental state. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). Manslaughter "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005) (citing *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). Whereas criminally negligent homicide "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result thereof [but fails] to perceive the risk." *Id.* Therefore, because criminally negligent homicide is a lesser included offense of manslaughter and murder, the first prong of *Guzman* is met.

We now turn to the second prong and determine whether some evidence would permit a rational jury to find that Macias possessed the culpable mental state of criminal negligence rather than recklessness. *See id.* Macias argues that if he either accidentally fired or fired a shot with the intent to scare, but not to hit anyone, the jury could have found that he was unaware of the risk of killing Guerra under a theory of

cause serious bodily injury to an individual, Casimiro Guerra, and that this act was clearly dangerous to human life; and that this act caused the death of Casimiro Guerra; you will find the defendant guilty of the offense of Criminally Negligent Homicide and so say by your verdict . . . .

This definition is an improper criminally negligent homicide instruction because it includes the language "with the intent to cause serious bodily injury," which is one theory to find criminal culpability for murder. *See* TEX. PENAL CODE ANN. § 19.02 (West, Westlaw through 2013 3d C.S.).

Regardless of Macias's error, based on the record, we conclude that Macias properly called the trial court's attention to his request for a criminally negligent homicide instruction in writing, as well as orally on the record. *See Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996) (holding that a defendant's requested instruction need not be in "perfect form," but rather "sufficient to apprise the trial judge of the objection to the charge."); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2013 3d C.S.) ("The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury.").

criminally negligent homicide.   We disagree.

The court of criminal appeals addressed the second prong of this analysis in a similar case styled *Thomas v. State*, 699 S.W.2d 845 (Tex. Crim. App. 1985) (en banc). In *Thomas,* the defendant was indicted for murder, but was convicted of voluntary manslaughter and sentenced to fifteen year's confinement for the shooting death of Roy Bishop, a restaurant owner, who had fought with Thomas.   On appeal, Thomas complained that his request for inclusion of the charge of criminally negligent homicide was erroneously denied by the trial court.   In affirming the trial court's judgment, the court of criminal appeals reasoned that not every case in which someone points a loaded gun at another or the allegation of accidental discharge raises the issue of criminally negligent homicide.   *See Thomas*, 699 S.W.2d at 850.   Instead, the "attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct."   *Id.* Furthermore, "evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk."   *Id.*

Here, the State elicited testimony from Officer Tidden and Ivana Bailey that indicated Macias had familiarity with the gun and had fired the gun a month prior that matched the ballistics to the one used in Guerra's death.   Furthermore, firearms examiner Curtiss testified that if someone pulls the trigger of a gun like one the used in this case and is able to immediately fire the gun without pulling the chamber back and forth, it indicates that the shooter had previously "chambered the bullet," making it ready to fire.   No evidence was presented to show that Macias pulled the chamber to his

8

firearm prior to firing it at the Stripes on November 18, 2012. This evidence shows that the level of awareness Macias had concerning the risk of injury or death involved in pointing a loaded gun with a chambered bullet at someone or at a car with passengers was such that he perceived the risk of harm that his conduct created. *See id.* at 852.[5] Finally, even if a rational jury believed that Macias fired the gun in self-defense or by accident, this does not show that he possessed the requisite mental state so that if guilty, he was guilty only of criminally negligent homicide. *See Thomas*, 699 S.W.2d at 850; *Guzman*, 188 S.W.3d at 188.

Therefore, because the evidence does not support Macias to a lesser-included instruction on criminally negligent homicide under the second prong of *Guzman*, we find no jury charge error. Macias's second issue is overruled.

## C. Self Defense and Defense of a Third Party

Lastly, Macias argues that Aparicio's testimony shows that (1) Aparicio saw a gun in Mondragon's car, (2) "yelled out a warning to Macias," and (3) caused Macias "to step forward and, ultimately fire the single shot" obligated the trial court to submit his requested self-defense and defense of a third party instructions to the jury.

### 1. Charge Error

It is well settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or

---

[5] The facts of this case differ from our opinion in *Smith v. State*, 721 S.W.2d 524, 527–28 (Tex. App.—Corpus Christi 1986, no pet.). In *Smith*, this Court reversed and remanded for a new trial based on the trial court's failure to provide a criminally negligent homicide instruction on the grounds that the defendant, who was not wearing his glasses, was "generally familiar with guns," "unfamiliar with pistols," and aimed the "in the general vicinity of the victim but did not know why the gun went off." *Id.* We concluded that the record in *Smith* raised sufficient evidence to warrant a criminally negligent homicide instruction. Here, however, those necessary facts found in *Smith* are not present. Accordingly, we find *Smith* distinguishable and inapplicable for purposes of this opinion.

9

contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish a defensive theory, the defendant is not entitled to an instruction on the issue. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger*, 3 S.W.3d at 38.

The trial court submitted the following relevant instruction to the jury on the issue of self-defense:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, JOSE ANGEL MACIAS, did cause the death of Casimiro Guerra by shooting Casimiro Guerra with a firearm, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both, of Casimiro Guerra it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force of Casimiro Guerra, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Casimiro Guerra's use or attempted use of unlawful deadly force, and that a reasonable person in defendant's situation would not have retreated, then you should acquit the defendant on the grounds of self-defense . . . .

Next, the trial court submitted the following relevant instruction to the jury on the issue of defense of a third person:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, JOSE ANGEL MACIAS, did cause the death of Casimiro Guerra by shooting Casimiro Guerra with a firearm, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both, of Casimiro Guerra it reasonably appeared to the defendant that the life of Alejandro Aparicio was in danger and there was created in his mind a reasonable expectation or fear of Alejandro Aparicio's death or serious bodily injury from the use of unlawful deadly force by Casimiro Guerra, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect Alejandro Aparicio

10

against Casimiro Guerra's use or attempted use of unlawful deadly force, and that a reasonable person in defendant's situation would not have retreated, then you should acquit the defendant on grounds of defense of third person . . . .

Macias objected[6] to the trial court's self-defense instruction and requested the following instruction in its place:

Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question, the Defendant, Jose Angel Macias, did cause the death of Casimiro Guerra by shooting Casimiro Guerra with a firearm, but you further find from the evidence as viewed from the standpoint of the Defendant at the time, that from the words or conduct or both of another it reasonably appeared to the Defendant that his life or person was in danger and there was creating in his mind a reasonable expectation of fear of death or serious bodily injury from the use of unlawful deadly force of another and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against another's use or attempted use of unlawful deadly force. . . .

Likewise, Macias objected and requested the following instruction on the issue of defense of a third person:

Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question, the Defendant, Jose Angel Macias, did kill Casimiro Guerra by shooting him with a firearm, namely, a gun, as alleged in the indictment, but you further find from the evidence as viewed from the standpoint of the Defendant at the time, that from the words or conduct or both of another, it reasonably appeared to the Defendant that his life or person was in danger and there was created in his mind a reasonable expectation of fear or death—of fear of death or serious bodily injury from the use of unlawful deadly force at the hands of another and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against another's use or attempted use of unlawful deadly force, he shot Casimiro Guerra with a gun and that a reasonable person in Defendant's situation would not have retreated . . . .

Absent a few exceptions, *see* TEX. PENAL CODE ANN. § 9.31(b) (West, Westlaw

---

[6] The State, again, raised the question of whether Macias properly preserved error on this issue. Like Macias's second issue, we hold that error was preserved because Macias properly apprised the trial court of its objections to these portions of the charge, and the trial court noted these objections. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14.

through 2013 3d C.S.), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against *the other's* use or attempted use of unlawful force. *Id.* § 9.31(a) (emphasis added). Furthermore, as applied to this case, section 9.33 of the penal code provides that "a person is justified in using force or deadly force against *another* to protect a third person if" the actor would be justified under section 9.31 "in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33 (West, Westlaw through 2013 3d C.S.) (Defense of Third Person) (emphasis added). The language of these provisions logically implies that "the other" who uses or attempts to use unlawful force as indicated in subsection (a) of section 9.31 is "the person against whom the force was used." *See id.* § 9.31(a)(1).

Applied to this case, "the other" would be the victim, Casimiro Guerra. However, the record is devoid of any evidence that would support the defensive instructions provided to the jury. Aparicio testified that he saw only Mondragon and Martinez in the vehicle that evening. Furthermore, aside from acknowledging that he was present in the back seat of the vehicle, neither Mondragon nor Martinez testified that Guerra participated in the drug deal, spoke to Aparicio or Macias, or even made his presence known during the transaction. We disagree with the trial court's rationale in overruling Macias's objection that the way the charge was worded "track[ed] the law better" and would remain as submitted to the jury. Instead, the evidence, specifically Aparicio's testimony that he only observed Martinez and Mondragon in the vehicle and that the he

12

yelled out "strap," supported a defensive instruction that would include Martinez and/or Mondragon's name, and not Guerra's, as the aggressor.

Additionally, despite the State's argument[7] during the charge conference, the trial court failed to include a limiting application instruction to the defensive instructions pursuant to section 9.05 of the penal code if it had found that Macias acted recklessly. *See* TEX. PENAL CODE ANN. § 9.05 (West, Westlaw through 2013 3d C.S.) ("Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.").

As a result, we conclude that the trial court erred in providing the self-defense and defense of a third person instruction to the jury because such defensive issues—as instructed—were not raised by the evidence. *See Granger*, 3 S.W.3d at 38. Furthermore, the trial court erroneously failed to include the limitation instruction as provided by Texas Penal Code section 9.05. Having found charge error, we will now assess for harm. *See Ngo*, 175 S.W.3d at 743.

---

[7] We note that the State's appellate counsel—who did not try the case, but argued on behalf of the State during the charge conference—asserted the following:

Okay. Yes, Your Honor. I think that they're probably entitled to a self-defense instruction on the murder charge, even if it was another party that unintendedly got killed. But the way that [penal code section 9.05] reads, if we're proceeding on manslaughter, I think in that case, self-defense is inapplicable. I think probably you would want to charge it, charge all the sections in the general charge, in the application paragraph, you might want to specify that [section 9.05] would exclude self-defense for reckless conduct, whereas the murder we're charging intentional or knowing and [section 9.05] has nothing to say about that. So I think they're probably right, self-defense would apply to the murder, but not to the manslaughter, the lesser.

### 2. Harm Analysis

We will reverse if the record reveals "some harm." *Reeves*, 420 S.W.3d at 816. Macias argues that he suffered some harm because the error in this case "left [the jury] with an incorrect filter through which to evaluate the evidence" and consider the defenses that the evidence supported. We agree.

#### a. The Jury Charge

We begin our analysis by first looking to the charge as a whole. *See Wooten*, 400 S.W.3d at 606. Although the charge, as submitted, contained an instruction on self-defense and defense of a third person, the application paragraphs of both instructions are erroneous because both instructions limited Macias's right to self-defense and defense of a third party solely as to Guerra's actions prior to the shooting. This error, in effect, caused the jury to shift its focus away entirely from the actions of the purported aggressors (Martinez and/or Mondragon) to Guerra, the victim, who played no role in the drug deal and whose presence was unknown to Aparicio or Macias.

In further analyzing the charge as a whole, we consider the appellate presumption that the jury is presumed to have understood and followed the court's charge absent evidence to the contrary. *See Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). Under this presumption, we must presume that the jury followed the erroneous instruction which authorized a finding of self-defense or defense of a third party only if the jury believed that "from the words or conduct, or both, of Casimiro Guerra it reasonably appeared to the defendant" that his life or Aparicio's life was in danger. Under this erroneous instruction, the only way the jury could have made these affirmative

14

defensive findings would have been to completely ignore the evidence and record before it.

We also note that this error occurred in the application paragraph of the charge. "The application paragraph is that portion of the charge which authorizes the jury to act." *Id.* Although the charge generally contained a correct statement of law with regard to self-defense and defense of a third party, *see* TEX. PENAL CODE ANN. §§ 9.31, 9.33, the instruction did not authorize the jury to consider whether Macias was justified under either defensive theory based upon the "words or conduct, or both," of Martinez and/or Mondragon.

Nothing in the record suggests that the jury did not understand or follow the court's charge, and we must presume that it is possible that Macias was convicted by a jury that may have wanted to, but was not allowed to, take into account Mondragon or Martinez's actions when considering Macias's defensive claims, or how section 9.05 limits the defensive finding on reckless conduct. *See Sparks v. State*, 177 S.W.3d 127, 134–35 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

### b. Counsel's Argument

Second, we examine the arguments of counsel. *See Wooten*, 400 S.W.3d at 606. During closing arguments, Macias's lead trial counsel emphasized the defense of a third person defensive theory for the jury and asked them decide whether Macias's action in defending Aparicio were "reasonable" in spite of the "emotional toll" of Guerra's death. Macias's co-defense counsel focused a majority of his argument on Macias's recklessness and argued to the jury to find Macias guilty of the lesser-included offense of manslaughter rather than the more serious charge of murder.

15

The State's lead trial counsel, however, highlighted the erroneous self-defense instruction and argued the following to the jury:

> In order for you to even consider self-defense, he had to have thought that he was gonna get shot or the threat of being shot. But, you know what? I want you to pay attention to [paragraph] 15. And, when you put it into words, it says: "From the standpoint of him, Jose Macias, from the words or conduct or both of Casimiro Guerra, did it reasonably appear to him that his life was in danger?" Defense just got up here two seconds ago and said there's no testimony that this guy ever said anything. And then, they, also, wanna argue, "You know, he didn't even see that guy." But he was so scared of that guy who they're claiming that didn't even know exists, that he had to shoot someone. Self-defense does not make sense in this case, and when you see the wording of it, I think, you're gonna find that clear.

Co-counsel for the State also highlighted the erroneous jury charge instruction and emphasized that no evidence would sustain an affirmative finding of either defensive theory:

> They talked about self-defense. Self-defense is laughable. If you look at the Charge, page seven, it refers to self-defense. And it's—it's wordy, but what self-defense says is that, if Casimiro Guerra—it said, "if the words or conduct or both of Casimiro Guerra"—and I underlined it three times—that, if his actions created in Mr. Macias's mind a reasonable expectation that Mr. Macias was in—should be in fear of his death or serious bodily injury from the use of the—or unlawful deadly force of Casimiro Guerra? There is no indication that Casimiro Guerra did anything. He sat there. He didn't have a gun. Nobody said he had a gun. Nobody said—even Mr. Aparicio, nobody said Casimiro Guerra had a gun, pulled a gun, shot a gun, said anything, did anything at all to Mr. Macias. In fact, Mr. Macias has said, "I didn't know he was there." That's—that's what y'all are getting from this, that's what his lawyers are telling you guys, is that he doesn't think that there's anybody there. There's no indication that Mr. Guerra did anything like that.
>
> And if you look on the next page, we talk about third person, defense of third person. I guess, the argument is he was defending Mr. Aparicio. There the same thing. Talks about what was the words and conduct of Casimiro Guerra and did this man have to defend Aparicio by shooting Casimiro Guerra? Well, Casimiro Guerra didn't do anything to Mr. Aparicio, either. There's no indication he did. So those are just right out. I don't even know why that's in the Jury Charge, but if you ask for it, it's in the Charge, so that's in the Charge. But I don't think there's any evidence about that.

16

### c. The Evidence

Next, we look at the state of the evidence, including the contested issues and weight of probative evidence. *See Wooten*, 400 S.W.3d at 606; *Almanza*, 668 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc) (op. on reh'g). As highlighted previously, the jury had conflicting testimony from three out of the five individuals who were present the night of November 18, 2012. Aparicio testified that he witnessed a gun in the vehicle and saw Martinez "fiddling with the [drug] money" and remarked to Macias that "something wasn't right" before he yelled out "strap" and fell back just before Macias fired his gun. Martinez and Mondragon denied that either possessed a gun that night. Martinez testified that he felt like "something [bad] was going to happen" that night prior to the shot being fired. Mondragon testified that Macias attempted to open the driver's door of his vehicle and shoved a pistol in his face prior to the gunshot. Martinez and Mondragon both admitted that they each initially lied to the police about the events that evening, but later told them the truth.

The jury also viewed surveillance footage from the Stripes store, which depicted the entirety of the transaction and heard testimony from the investigating police officers. Dr. Fernandez, the medical examiner, testified that the gun shot entered Guerra's upper left arm, exited his upper left arm, and entered the left-side of his chest. Furthermore, Dr. Fernandez testified that if "something" was in between Guerra and the shooter, such as a window, Guerra's wounds indicated that the shooter fired from the driver's side of the vehicle.

### d. Other Relevant Information

Finally, we address any other relevant information revealed by the record as a

17

whole. *See Wooten*, 400 S.W.3d at 606. As noted in footnote 7, the State along with the defense proposed a self-defense instruction fused with a section 9.05 limitation instruction. *See Sparks*, 177 S.W.3d at 133 n.5 (describing the proper way a trial court should instruct a jury pursuant to penal code section 9.05 along with a self-defense instruction). The trial court responded to the proposal by stating: "Well, if it's prepared that way, then we'll probably entertain it and put it—are they doing that right now?" The State's prosecutor then replied by stating: "I'll make sure that they get it that way, Judge." A review of the charge, however, shows that despite the State's assurances on the section 9.05 limiting instruction, such an instruction was not provided in the charge. We also find no objection from the State in the record with regard to the self-defense instruction and a lengthy discussion—with generally no objection from the State—about the defense of a third person instruction.

### e. Summary

The trial court's inclusion of Guerra's name in the self-defense and defense of a third party instruction harmed Macias because this error denied Macias an opportunity to present proper defensive theories that were raised by the evidence. *See Warner*, 245 S.W.3d at 461. Additionally, the charge also did not include the appropriate instruction that harmonized the defensive theories with section 9.05, as argued by the State and the defense during the charge conference. This error allowed the jury to find Macias: (1) guilty of murder or manslaughter; or (2) not guilty based upon legally insufficient defensive theories. As such, we conclude that the denial and non-inclusion of his requested instructions prevented Macias from presenting a proper defensive theory for the jury to accept or reject, and this harmed Macias. We sustain Macias's final issue.

### III.    CONCLUSION

Because Macias was harmed by the trial court's erroneous jury instruction on the issues of self-defense and defense of a third person, we reverse the trial court's judgment and remand for a new trial.

/s/ Gina M. Benavides
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
12th day of March, 2015.