Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## OPINION

No. 04-10-00623-CR

Gerardo **ECHAVARRIA** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. 09-CRS-112
Honorable Alex William Gabert, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  December 30, 2011

AFFIRMED

Gerardo Echavarria Jr. was convicted of murder and sentenced to fifty years in prison. Echavarria appeals, contending the trial court committed charge error, made erroneous evidentiary rulings, and allowed the prosecutor to make improper arguments during the punishment phase of the trial. We affirm the trial court's judgment.

**FACTS**

During the early morning hours of February 28, 2009, Echavarria shot and killed Juan Raul Requenez in Rio Grande City, Texas. Echavarria admits he killed Requenez, but testified he did so because Requenez and Eloy Garcia Jr. had threatened to kill him. Witnesses testified that Echavarria and his fiancé, Georgina Medina, had been visiting and drinking with several of Medina's friends, first at a restaurant, then at a fair in Rio Grande City, and finally at Eloy Garcia Jr.'s house. The shooting occurred after everyone except Echavarria, Garcia, and Requenez had left. Garcia testified the men were outside the house talking, and Echavarria became angry when Requenez said that Medina was like a sister to him. According to Garcia, Echavarria put his beer on the ground and challenged Requenez to a fight. Echavarria grabbed at a beer that Requenez was holding, and Requenez responded by striking Echavarria in the face. The men exchanged blows until Echavarria finally got Requenez in a chokehold. Garcia testified he had not intervened in the fight before that time, but when Echavarria started choking Requenez, Garcia pulled on Echavarria's arm and told him to let Requenez go. Requenez managed to get away and began walking to his truck. Echavarria followed him, pulled out a handgun, and ordered Requenez to kneel down. According to Garcia, Echavarria pointed the gun "point-blank" at Requenez's face and pulled the trigger. The gun failed to fire. Requenez walked away and entered his truck. Echavarria retrieved the ammunition clip for the weapon and placed it into the weapon as he walked to Requenez's truck. Garcia testified he saw Echavarria fire three shots at Requenez, who was sitting in his truck. Echavarria then opened the truck door and fired several more shots into Requenez.

Echavarria testified that just before the fight began, Requenez was complaining about Echavarria's relationship with Medina. He said Requenez was upset that he could not see

Medina as often as he wanted because of her relationship with Echavarria. Echavarria testified he tried to mollify Requenez by putting his arm around his shoulder, but Requenez responded by hitting Echavarria in the face. Echavarria testified he pushed Requenez and tried to back away, but Requenez continued to strike him. When Echavarria was able to get a hold on Requenez, Garcia grabbed Echavarria's shoulders and knocked him to the ground. Echavarria and Requenez continued to wrestle on the ground. Echavarria testified that when he was again able to get a grip on Requenez, Requenez exclaimed that he would kill Echavarria unless he let go. Garcia pulled on Echavarria's arms and Requenez got on top of Echavarria and continued to strike him about the face. Echavarria testified he was able to pull a pistol from his waistband and he cocked it. At the sound of the pistol being armed, Garcia and Requenez got up and ran. Echavarria testified he saw the men running towards different trucks and he feared they were going to retrieve weapons. Echavarria testified he was going to shoot at Garcia, but could not see him because of blood pouring into his eye. When Echavarria heard Requenez open the truck door, he turned and fired several shots at him. Echavarria testified he then turned his weapon on Garcia, but realized Garcia did not have a weapon in his hands. He lowered his gun and called 911 to report the shooting. Police arrived at the scene and took Echavarria into custody.

Echavarria gave a recorded statement to the police. In the recorded statement, which was played for the jury, Echavarria stated he first fired at Garcia while Garcia was running away, then turned and fired at Requenez. In both the recorded statement and his trial testimony, Echavarria stated he fired his weapon because he thought the men, who had jointly attacked him, were going to retrieve weapons and he feared for his life.

**CHARGE ERROR**

The trial court instructed the jury on self-defense, apparent danger, multiple assailants, and provoking the difficulty. However, Echavarria contends the instructions were insufficient to properly advise the jury on the law of multiple assailants because the application paragraph of the charge referred only to Requenez's actions, rather than to the actions of both Requenez and Garcia.

The court's abstract instructions to the jury on the law of self-defense included the following paragraph:

> When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by one or more persons, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury at the hands of such assailants, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack, and it is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of deadly force.

The application paragraph on self-defense instructed:

IX.

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, GERARDO ECHAVARRIA JR., did intentionally or knowingly cause the death of an individual, namely, JUAN RAUL REQUENEZ, by shooting JUAN RAUL REQUENEZ with a deadly weapon; to wit: a handgun, but you also find from the evidence that, viewed from the standpoint of the defendant at the time, from words or conduct of JUAN RAUL REQUENEZ that it reasonably appeared to the defendant that his life or person was in danger, and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of JUAN RAUL REQUENEZ and that acting under such apprehension, the Defendant GERARDO ECHAVARRIA JR. reasonably believed that the use

of deadly force on his part was immediately necessary to protect him against JUAN RAUL REQUENEZ's use or attempted use of unlawful deadly force, then you should acquit the defendant on the grounds of self defense, or if you have reasonable doubt as to whether or not the defendant was acting in self-defense against JUAN RAUL REQUENEZ's use or attempted use of unlawful deadly force on the occasion and under the circumstances, then you should give the Defendant GERARDO ECHAVARRIA JR. the benefit of that doubt and, thereafter, find him not guilty of Murder, as alleged in the indictment.

Echavarria presented his requested instructions to the court, asking that the application paragraph of the charge instruct the jury that it could acquit if it found Echavarria reasonably believed he was facing death or serious bodily injury "at the hands of the deceased or other persons with the deceased, or any of them," or to protect himself from the deceased's use or attempted use of unlawful deadly force or the use or attempted use of such force "by those persons with the deceased." The requested instruction also included a closing paragraph:

> You are further instructed that in so acting in self-defense, if he was so acting at the time, the defendant had a right to act in self-defense against JUAN RAUL REQUENEZ without regard to whether he was also in fear of death or serious bodily injury at the hands of ELOY GARCIA JR., and he also had a right to act in self-defense against ELOY GARCIA JR. if he was in fear of death or serious bodily injury at the hands of either ELOY GARCIA JR. or JUAN RAUL REQUENEZ.

The trial court denied the requested instructions and Echavarria objected to the application paragraph of the charge for failing to refer to the conduct of Eloy Garcia Jr., as well as that of Requenez.

A trial court errs when it fails to provide an instruction on multiple assailants and self-defense if the issue is raised by the evidence. *See Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985). The defendant is entitled to a charge on a defensive issue if raised by the evidence even if that evidence is weak or contradicted, and regardless of whether the trial court finds the evidence credible. *See id.*; *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The multiple assailant instruction was explained by one judge as follows:

The theory behind the multiple assailants charge is that, when it is clear that an attack is being conducted by multiple people as a group, a defendant is justified in using force against any member of the group, even if the recipient of that force is not engaging in conduct that would, by itself, justify the use of force (or deadly force as the case may be). For example, if a defendant were trapped in a house with several hostile individuals, some of whom were brandishing firearms and threatening the defendant, the defendant may be justified in using deadly force against a different person who was blocking an exit that would otherwise be a viable path of retreat. The use of deadly force against the person blocking the exit would be justified, even though that person possessed no firearms and made no threatening moves, because of that person's complicity with those who threatened the defendant's life. The rule concerning multiple assailants is essentially an application of the law of parties to the defendant's assailants.

*Dickey v. State*, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (J. Keller concurring). Any error in failing to properly charge on multiple assailants is reversible only if Echavarria was harmed. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Because the claimed error was preserved, we reverse only if the record shows Echavarria suffered some actual harm as a result of the trial court's failure to properly instruct the jury. *See id.*; *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005); *Dickey*, 22 S.W.3d at 492.

Echavarria's testimony was sufficient to raise an issue of self-defense against multiple assailants. He testified Garcia repeatedly grabbed him while Requenez was hitting him, and he believed both men were attacking him. Echavarria testified Requenez threatened to kill him and he feared both Requenez and Garcia were running to obtain weapons. Although the court gave an abstract instruction on multiple assailants, it restricted the jury's consideration of self-defense in the application paragraph to only the actions of Requenez. We conclude the trial court erred by failing to charge the jury in the application paragraph that it could consider the actions of both Garcia and Requenez in deciding the self-defense issue. However, we also conclude the record does not show Echavarria suffered actual harm from the error.

Most of Echavarria's testimony about why he reasonably believed deadly force was immediately necessary to protect his life focused on Requenez's actions. Although Echavarria

stated once in his testimony that he feared both men were running to their respective trucks to obtain weapons, Echavarria testified numerous times he shot Requenez because he believed Requenez was reaching for a weapon. Echavarria told the jury that he first looked for, but did not see, Garcia. Then he heard Requenez open the truck door and Echavarria focused his attention on Requenez. If the jury had found Echavarria reasonably believed Requenez was about to use unlawful deadly force against him, or if the jury had a reasonable doubt about the reasonableness of Echavarria's belief, it would have returned a "not guilty" verdict. By its verdict, the jury found against Echavarria on this issue.

It is illogical to conclude Echavarria was harmed by the court's failure to properly instruct the jury. There was more evidence to support a belief that Requenez was reaching for a weapon than there was to support a belief that Garcia was going for a weapon. The original fight was between Echavarria and Requenez. Echavarria testified it was Requenez who threatened to kill him. And the only evidence Echavarria offered to support his belief that Garcia was going for a weapon was that he was running in the direction of his truck. Although we conclude there was sufficient evidence to entitle Echavarria to receive a jury instruction on joint attack, the record does not show Echavarria suffered actual harm as a result of the charge error, and we overrule his first issue.

## EXPERT TESTIMONY

In his second issue, Echavarria argues the trial court erred by refusing to permit his expert witness to testify about the training a Marine receives and how a trained Marine responds to a threatening situation.[1] During a hearing held outside the presence of the jury, Gunnery Sergeant Marcus Sugg testified he had been a Marine for eighteen years and possessed specialized

---

[1] Echavarria testified he enlisted in the Marine Corps in January 2004 and served until December 2006, when he received an other than honorable discharge. During that time, Echavarria received specialized infantry training and served eight months in Afghanistan.

knowledge about how Marines are trained. He explained that boot camp and advanced weapons training are designed to make Marines "act instinctively." He stated that Marines are trained to identify the threat and then eliminate the threat. Echavarria's attorney argued the evidence was admissible because:

> the witness . . . has specialized knowledge as to . . . how some of these Marines react under stressful situations under, uh, fights and which is the case here and it goes to the importance that the jury needs to consider the fact that whether he's a cold-blooded murderer or whether instinct took over because of his training and his reaction was nothing more than, uh, not to excuse the act, Your Honor, but to, uh, explain to the jury that, uh, basically it was his training that kicked in and for that reason we would urge the Court to reconsider and allow Gunnery Sergeant Sugg to testify in the case.

The trial court sustained the State's objection, and refused to permit Gunnery Sergeant Sugg to testify before the jury.

We review the trial court's evidentiary ruling for abuse of discretion, and we uphold the ruling if it is within the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 813-14 (Tex. Crim. App. 2010). An expert's testimony is not admissible unless it will "assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. The party offering expert testimony must demonstrate by clear and convincing evidence the testimony "'is sufficiently reliable and relevant to help the jury in reaching accurate results.'" *Tillman v. State*, No. PD-0727-10, 2011 WL 4577675 at *9 (Tex. Crim. App. Oct. 5, 2011) (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)).

Echavarria argues Sugg's testimony would have helped the jury understand he killed Requenez because of his training as a Marine. But this was not an issue before the jury. Under his defense of self-defense, a defendant's conduct is excused if he formed a reasonable belief that deadly force was immediately necessary to protect himself from another's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. § 9.32 (West 2011). The reasonableness

of the belief is measured by the objective standard of an "ordinary and prudent man." *See id.* § 1.07(42); *see also Davis v. State*, 104 S.W.3d 177, 181 (Tex. App.—Waco 2003, no pet.) ("Although the jury employs an objective standard to determine the reasonableness of the defendant's belief, it must view the facts from the defendant's perspective."). How a trained Marine instinctively reacts to a perceived threat is not relevant to the issue of whether an ordinary and prudent man, viewing the circumstances from Echavarria's viewpoint, would have formed a reasonable belief that deadly force was immediately necessary to protect himself from Garcia's or Requenez's use or attempted use of unlawful deadly force. The trial court's decision to exclude the evidence therefore was not outside the zone of reasonable disagreement. *See Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986) (holding evidence that defendant may have been influenced by his family's experience in Holocaust when shooting victim was not relevant to claim of self-defense because the evidence "only tended to show the possibility appellant was not an ordinary and prudent man with respect to self-defense," and this did not entitle him to "an enlargement of the statutory defense on account of his psychological peculiarities").

## REMAINING ISSUES

In his last two issues, Echavarria contends the trial court erred in admitting harmful evidence of extraneous misconduct and in "allowing" the State to make "improper and prejudicial" arguments to the jury. However, Echavarria did not object to the evidence or argument at trial. He therefore failed to preserve any error for appellate review. *See* TEX. R. APP. PROC. 33.1; *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

## CONCLUSION

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

Publish