**Opinion issued April 20, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00795-CR

————————————

**FRANCISCO VASQUEZ JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court No. 4**
**Tarrant County, Texas[1]**
**Trial Court Case No. 1502102D**

---

**MEMORANDUM OPINION**

---

[1]    Under its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 19-9091 (Tex. Oct. 1, 2019); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

Francisco Vasquez, Jr. was convicted of murder and sentenced to 50 years' confinement. *See* TEX. PENAL CODE § 19.02(b)(1), (2). On appeal, he raises four issues.

In his first two issues, Vasquez contends that the trial court committed reversible error by refusing his requests to submit instructions on the lesser-included offenses of aggravated assault and manslaughter. In his third issue, Vasquez contends that the trial court abused its discretion in excluding out-of-court statements made by Vasquez's girlfriend offered to show their effect on Vasquez's state of mind at the time of the offense. And in his fourth issue, Vasquez contends that the trial court committed reversible error by submitting a self-defense instruction containing an inaccurate definition of "reasonable belief."

We hold that the trial court did not err in denying Vasquez's requests for lesser-included offense instructions for aggravated assault and manslaughter because neither offense was a valid, rational alternative to the charged offense of murder under the facts of the case; that the trial court's error, if any, in excluding Vasquez's girlfriend's out-of-court statements was harmless; and that the self-defense instruction correctly defined "reasonable belief" in accordance with the Penal Code.

Therefore, we affirm.

## Background

This is a murder case. The defendant, Francisco Vasquez, killed the victim, Rolando Aguirre, by stabbing him multiple times in the back with a kitchen knife in an altercation that occurred at Vasquez's apartment and arose from Aguirre's unwanted advances on Vasquez's then-girlfriend (and now-wife), Ashley Vasquez.

The evidence shows that, one night in May 2017, Ashley Vasquez went out with friends, ended up drinking too much, and temporarily blacked out. When she came to, she was in her bed having sex with Aguirre. In the weeks that followed, Aguirre sent Ashley numerous text messages asking her for sex. Ashley rejected Aguirre's advances, explaining to him that she had a boyfriend, but Aguirre continued texting her.

Eventually, Ashley told Vasquez what was going on, explaining how she had had sex with Aguirre, was not sure whether it had been consensual, and was now receiving unwanted texts from him. Vasquez then told Aguirre to leave Ashley alone, and Aguirre temporarily stopped texting her. But after a brief hiatus, Aguirre resumed sending Ashley the unwanted texts.

On June 11, 2017, Ashley was with Vasquez when she received another unwanted text from Aguirre. Posing as Ashley, Vasquez responded to Aguirre's text, telling him to come to her apartment. When Aguirre arrived, Vasquez let him into

3

the apartment, and a fight ensued during which Vasquez stabbed Aguirre in the back seven times with a kitchen knife, causing Aguirre's death.

When the fight was over, Vasquez and Ashley fled the scene in separate cars. A neighbor then called 911, and police and paramedics were dispatched to the apartment complex, where they found Aguirre's body lying on the ground at the bottom of the outdoor stairwell. The police then followed a trail of blood from Aguirre's body to Vasquez's second-story apartment, where they found the knife Vasquez used to stab him.

Several neighbors told the police there had been a fight and provided descriptions and vehicle information to the police. The police then traced the described vehicles to Ashley's mother's house, where they found both Ashley and Vasquez. The lead investigator then interviewed Vasquez, who admitted to stabbing Aguirre but claimed he had acted in self-defense.

Vasquez was indicted for murder. He pleaded not guilty, and the case proceeded to trial. The jury rejected Vasquez's defensive theory, found him guilty of murder, and assessed punishment at 50 years' confinement. The trial court signed a judgment of conviction in accordance with the jury's verdict. Vasquez appeals.

**Omission of Lesser-Included Offense Instructions**

In his first and second issues, Vasquez contends that the trial court committed reversible error by refusing his request to submit instructions on the lesser-included

4

offenses of aggravated assault and manslaughter. The State responds that Vasquez was not entitled to either instruction because neither lesser-included offense was a valid, rational alternative to the charged offense of murder under the facts of the case.

## A. Applicable law and standard of review

Under Texas criminal law, a defendant is entitled to an instruction on a lesser-included offense if the lesser-included offense satisfies a two-prong test. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012).

Under the first prong, the lesser-included offense must actually be a lesser-included offense of the charged offense. *Palmer v. State*, 471 S.W.3d 569, 570 (Tex. App.—Houston [1st Dist.] 2015, no pet.). That is, the lesser-included offense must be included "within the proof necessary to establish the offense charged." *Bullock*, 509 S.W.3d at 924. Whether a lesser-included offense satisfies the first prong is a question of law, which we review de novo without considering the evidence. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. (Tex. Crim. App. App. 2007).

Under the second prong, the lesser-included offense must be "a valid, rational alternative to the charged offense." *Bullock*, 509 S.W.3d at 925. To be a valid, rational alternative, the lesser-included offense must be supported by some evidence in the record that would permit the jury rationally to find the defendant

5

guilty of only the lesser charge. *Id.* That is, there must be "some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* Whether a lesser-included offense satisfies the second prong is a question of fact, which we review for an abuse of discretion, considering all the trial evidence. *Cavazos*, 382 S.W.3d at 383.

The erroneous refusal to give a requested instruction on a lesser-included offense is charge error subject to an *Almanza* harm analysis. *Braughton v. State*, 522 S.W.3d 714, 736 (Tex. App.—Houston [1st Dist.] 2017), *aff'd*, 569 S.W.3d 592 (Tex. Crim. App. 2018); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on rehearing). When, as here, error has been properly preserved, we will reverse if the error resulted in some harm to the defendant. *Braughton*, 522 S.W.3d at 736.

## B. Analysis

Vasquez was charged with committing murder by (1) intentionally or knowingly causing the death of Aguirre by stabbing him with a knife or (2) causing the death of Aguirre by committing an act clearly dangerous to human life (stabbing him with a knife) with intent to cause Aguirre serious bodily injury. Vasquez contends that aggravated assault and manslaughter were both lesser-included offenses of the charged offense of murder under the facts of the case. Vasquez

6

therefore contends that the trial court erred in refusing to submit lesser-included offense instructions for these two offenses. We consider each offense in turn.

### 1. Aggravated assault

Our first step is to determine whether aggravated assault is a lesser-included offense of murder. As charged in this case, a person commits murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(1), (2). A person commits aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another. *Id.* § 22.02(a)(1); *see also id.* § 22.01(a)(1).

It is undisputed that aggravated assault is a lesser-included offense with respect to the second definition of murder. *See Griffin v. State*, 461 S.W.3d 188, 191 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999) ("[A]ggravated assault can be a lesser-included offense of murder."); *Bergeron v. State*, 981 S.W.2d 748, 750 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) ("Aggravated assault is a lesser included offense of murder, as defined by statute."). We hold that the first prong is satisfied.

We now determine whether aggravated assault is a valid, rational alternative to murder. The undisputed evidence shows that Vasquez intentionally caused the

death of Aguirre by stabbing him with a knife. The only factual dispute was whether Vasquez acted in self-defense. Under the facts of the case, the jury could have found that either (1) Vasquez intentionally caused Aguirre's death without justification and was therefore guilty of murder or (2) Vasquez intentionally caused Aguirre's death but acted in self-defense and was therefore not guilty of murder. But the jury could not have found that Vasquez intentionally injured—but did not kill—Aguirre.

When, as here, it is undisputed that a defendant charged with murder caused the complainant's death, the defendant is not entitled to a lesser-included offense instruction for aggravated assault. *See, e.g.*, *Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999) ("A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide."); *Forest*, 989 S.W.2d at 368 (holding that defendant charged with murder was not entitled to aggravated assault instruction when it was undisputed defendant caused victim's death and defendant "admitted he meant to shoot the victim 'in the butt' but claim[ed] that he did not intend to kill him"); *Armstrong v. State*, 179 S.W.3d 84, 87 (Tex. App.—Fort Worth 2005, no pet.) (holding that capital murder defendant was not entitled to aggravated assault instruction when defendant did not dispute causing victim's death and there was no evidence that victim suffered lesser form of serious bodily injury). We hold that the second prong is not satisfied.

We hold that the trial court did not err in refusing Vasquez's request to submit a lesser-included offense instruction for aggravated assault. We overrule Vasquez's first issue.

### 2. Manslaughter

We now turn to manslaughter, starting with the first prong. As charged in this case, a person commits murder if he "intentionally or knowingly causes the death of an individual." PENAL § 19.02(b)(1). A person commits manslaughter "if he recklessly causes the death of an individual." *Id.* § 19.04(a). Thus, manslaughter is a lesser-included offense of murder, with murder requiring a heightened mental state. *Cavazos*, 382 S.W.3d at 384 ("We conclude that [manslaughter] differs from [murder] only in the respect that a less culpable mental state establishes its commission."); *Gahagan v. State*, 242 S.W.3d 80, 89 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Manslaughter is a lesser included offense of murder."). We hold that the first prong is satisfied. We now turn to the second prong.

To satisfy the second prong, Vasquez must show some evidence exists that he acted only recklessly—and not intentionally or knowingly—when he stabbed Aguirre with the knife. *See Nevarez v. State*, 270 S.W.3d 691, 694 (Tex. App.—Amarillo 2008, no pet.) ("Application of the second prong of the test requires that there exist in the record some evidence that appellant was reckless in causing the death of the victim, but did not act intentionally or knowingly."); *see also*

9

PENAL § 6.03 (defining culpable mental states). But it is undisputed that Vasquez acted intentionally. Vasquez admitted that he intentionally stabbed Aguirre. He claimed he acted in self-defense.

It is well-established that the justification of self-defense is inconsistent with a claim that the defendant acted only recklessly. *See, e.g.*, *Martinez v. State*, 16 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("[O]ne cannot accidentally or recklessly act in self-defense."); *Nevarez*, 270 S.W.3d at 695 ("[T]he justification of self-defense is inconsistent with a claim that the defendant acted only recklessly."); *Avila v. State*, 954 S.W.2d 830, 843 (Tex. App.—El Paso 1997, pet. ref'd) (holding that defendant's "testimony that he acted in self-defense preclude[d] an instruction on an accidental or reckless discharge of a weapon").

Moreover, Vasquez never claimed he stabbed Aguirre by accident, and there is no other testimony or evidence from which such a finding could be inferred. *See Murray v. State*, No. 01-17-00437-CR, 2018 WL 3849076, at *9 (Tex. App.—Houston [1st Dist.] Aug. 14, 2018, pet. ref'd) (mem. op., not designated for publication) (defendant not entitled to manslaughter instruction "when there is no evidence that the defendant accidentally discharged the weapon"); *see also Hayes v. State*, 728 S.W.2d 804, 810 (Tex. Crim. App. 1987) (noting some evidence that "actual discharge of the gun was accidental, occurring during a struggle between appellant and the complainant"); *O'Brien v. State*, 89 S.W.3d 753, 756 (Tex. App.—

Houston [1st Dist.] 2002, pet. ref'd) (relying on "some evidence that the gun accidentally went off after [the defendant] was hit by the board"); *Johnson v. State*, 828 S.W.2d 511, 513–14, 516 (Tex. App.—Waco 1992, pet. ref'd) (shooting twice while wrestling with victim raised evidence of recklessness).

Without any evidence of an accidental stabbing and given that Vasquez presented a self-defense theory throughout the trial, manslaughter is not a valid, rational alternative to murder. The second prong is not satisfied.

We hold that the trial court did not err in refusing to charge the jury on manslaughter as a lesser-included offense of murder. We overrule Vasquez's second issue.

**Exclusion of Evidence**

In his third issue, Vasquez contends that the trial court abused its discretion in excluding out-of-court statements offered to show his state of mind at the time of the offense. Specifically, Vasquez contends the trial court abused its discretion in admitting a recording of his interview that redacted three statements he made to the investigator. Each statement related to the night Aguirre and Ashely had sex and whether Ashley had consented.

In the first statement, Vasquez explained that Ashley did not know whether Aguirre had actually assaulted her: "And she don't know if he raped her or if she

11

actually wanted to have sex with him because she don't drink and when she woke up she wanted to cut him off."

In the second statement, Vasquez recounted how he had told Ashley, "You don't know if this man raped you, you have no clue."

In the third statement, Vasquez explained that while he was not sure exactly what happened between Aguirre and Ashley, he was nevertheless troubled by the incident: "Like I said, I don't know if he raped this woman or what the hell happened, but all that shit together just, nuh-uh."

At trial, Vasquez objected to the redactions, arguing that the statements should have been included because they were relevant to show his state of mind at the time of the offense, specifically, his belief that Aguirre had sexually assaulted Ashley and might have done so again unless he used deadly force to stop him. The State responded that the redacted statements were irrelevant to show Vasquez believed Aguirre had sexually assaulted Ashely because the statements did not show that was what Vasquez actually believed. Instead, the State argued, the statements showed that Vasquez believed it was unclear what had happened between Aguirre and Ashley. The State characterized the statements as an unfairly prejudicial character assassination accusing the victim (Aguirre) of an uncharged offense (sexual assault). The trial court overruled Vasquez's objections and admitted the redacted recording of the interview, which was played for the jury.

Vasquez further contends that the trial court abused its discretion in excluding his testimony, presented in a bill of review, recounting what Ashley had told him about the night she had sex with Aguirre and how the incident had negatively affected both of them. In the bill of review, Vasquez testified that Ashley first told him what had happened after he noticed that she had received a text from Aguirre. Ashley "basically explained that she woke up and [Aguirre] was on top of her in her bedroom, and she tried to get him out." When describing what had happened, Ashley "broke down" and started "crying," explaining to Vasquez that "she hadn't told her family or anybody else" about that night. Vasquez further testified that Ashley later told him that the sex had not been consensual, but that she did not want to tell anyone because Aguirre was friends with Ashley's brother. Finally, Vasquez testified that as Ashley continued to receive texts from Aguirre, she grew more and more upset, and was particularly upset the night of June 11, when the murder occurred.

The State objected that the testimony was inadmissible hearsay to the extent it restated Ashley's out-of-court statements to Vasquez. Vasquez responded that it was not hearsay because it was not being offered to prove the truth of the matters asserted but to show Vasquez's state of mind at the time of the murder, which was relevant to whether Vasquez reasonably believed deadly force was immediately necessary to defend either himself or Ashley. The trial court sustained the State's objections and excluded the testimony.

13

Now, on appeal, Vasquez argues that the trial court abused its discretion in excluding the redacted statements and testimony because the evidence was relevant and admissible to show his state of mind at the time of the murder, specifically, his fear that Aguirre would sexually assault Ashley unless he used deadly force to stop him. The State responds that Vasquez has failed to preserve error; that the statements and testimony were not relevant or otherwise admissible to show their effect on Vasquez's state of mind at the time of the murder; and that any error in excluding the evidence was in any event harmless. Assuming without deciding that Vasquez preserved error and that the trial court abused its discretion in excluding the statements and testimony, we hold the erroneously excluded evidence did not harm Vasquez.

The erroneous exclusion of evidence is generally considered nonconstitutional error subject to harm review under Rule of Appellate Procedure 44.2(b). Under Rule 44.2(b), error is not harmful unless it affects the defendant's substantial rights. *See Walters v. State*, 247 S.W.3d 204, 218–19 (Tex. Crim. App. 2007). The defendant's substantial rights are affected if the error had a substantial and injurious effect or influence on the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005).

In assessing whether the error affected the defendant's substantial rights, the reviewing court examines the record as a whole. *Motilla v. State*, 78 S.W.3d 352,

355 (Tex. Crim. App. 2002). If, after doing so, the reviewing court has fair assurance that the error did not influence the jury or had but a slight effect, the error did not affect the defendant's substantial rights. *Id.*

At trial, the jury was presented undisputed evidence, including the recording of Vasquez's interview, that Ashley told Vasquez that Aguirre had had sex with her the night she got drunk and temporarily blacked out. From this testimony, the jury could have reasonably concluded that the encounter had not been consensual and that Aguirre had committed sexual assault. The excluded evidence, if admitted, would have at most lent incremental support to such a conclusion. But there is also a reasonable chance that it would have undermined such a conclusion, given Vasquez's repeated statements to the lead investigator that neither he nor Ashley were sure whether the sex had been consensual.

Moreover, Vasquez's alleged fear that Aguirre might sexually assault Ashley was not the principal reason he claimed he believed the use of deadly force was immediately necessary. Instead, the principal reason supporting his claim was that Aguirre had allegedly started the fight and eventually gained the upper hand by pinning him down on the floor. Whether Vasquez reasonably believed deadly force was necessary to prevent Aguirre from hurting Ashley after the fight is irrelevant to whether Vasquez reasonably believed deadly force was necessary to stop Aguirre from hurting him during the fight.

15

Finally, the evidence presented to the jury supported the jury's rejection of Vasquez's defensive theory. This evidence included (1) the text Vasquez sent to Aguirre, posing as Ashley, inviting Aguirre to the apartment, (2) Vasquez's admission that his intent in inviting Aguirre to the apartment was to fight him, (3) the location of Aguirre's stab wounds, all of which were to his back and not his front or side, (4) Aguirre's lack of any defensive wounds, (5) Vasquez's failure to call 911 or otherwise attempt to help Aguirre when the fight was over, and (6) Vasquez's immediate flight from the scene of the crime. From this evidence, the jury could have reasonably found that Vasquez did not kill Aguirre in self-defense but instead murdered Aguirre after luring him to the apartment by posing as Ashley with the intent to kill or seriously injure him when he arrived.

It is unlikely the excluded evidence would have affected how the jury weighed this evidence. The jury had already been presented evidence that Vasquez knew Aguirre (1) had had sex with Ashley when Ashley was very drunk (and therefore incapable of consenting) and then (2) began sending her unwanted texts asking her for more sex. The excluded evidence, if admitted, would not have developed either of these facts in any material way or established any other fact relevant to show Vasquez's state of mind at the time of the murder.

Viewing the record as a whole, we have fair assurance that any error in excluding the statements and testimony did not influence the jury or had but a slight

16

effect. Therefore, we hold that the exclusion of the evidence was harmless. Accordingly, we overrule Vasquez's third issue.

## Erroneous Self-Defense Instruction

In his fourth issue, Vasquez contends that the trial court committed reversible error by submitting a self-defense instruction that failed to accurately state the law. The charge's self-defense instruction provided:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> The use of force against another is not justified in response to verbal provocation alone.
>
> A person is justified in using force to protect himself against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of sexual assault.
>
> By the term "reasonable belief" as herein used is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.
>
> By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.
>
> When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly

17

force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. And it is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Francisco Vasquez Jr., in the County of Tarrant and State of Texas, on or about the 11th day of June 2017, did intentionally or knowingly cause the death of Rodrigo Aguirre by stabbing him with a deadly weapon, to-wit; a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury to Rodrigo Aguirre; or did intentionally, with the intent to cause seriously bodily injury to Rodrigo Aguirre, commit an act clearly dangerous to human life, namely, stabbing Rodrigo Aguirre with a deadly weapon, to-wit: a knife, that in the manner of its use or intended uses was capable of causing death or serious bodily injury, and thereby caused the death of Rodrigo Aguirre, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the Defendant at the time, from the words or conduct, or both, of Rodrigo Aguirre, it reasonably appeared to the Defendant that his life or person was in danger and there was created in the Defendant's mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Rodrigo Aguirre and that the Defendant, acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Rodrigo Aguirre's use or attempted use of unlawful deadly force, and that he, therefore, stabbed Rodrigo Aguirre, then you will find the Defendant not guilty.

If you find from the evidence beyond a reasonable doubt that at the time and place in question an ordinary and prudent person in the Defendant's

18

situation would not have reasonably believed that he was in danger of death or serious bodily injury before using deadly force against Rodrigo Aguirre, or that a reasonable person under such circumstances as viewed by the Defendant from his standpoint at the time would not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Rodrigo Aguirre's use or attempted use of unlawful deadly force, then you should find against the Defendant on this issue of self-defense.

Vasquez contends that the definition of "reasonable belief" in the abstract portion of the instruction "conflicts with the law of self-defense and defense of third persons." The State responds that the trial court properly defined "reasonable belief" in accordance with the established law.

## A.   Applicable law and standard of review

The purpose of the trial court's jury charge is to instruct the jurors on the law applicable to the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense. *Id.* The charge must also instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). In reviewing the charge for error, we examine the charge as a whole instead of as a series of isolated and unrelated statements. *Vasquez*, 389 S.W.3d at 366.

We review for charge error in two steps. First, we determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If it does, then,

19

second, we analyze the error for harm. *Id.* The degree of harm required for reversal depends on whether the error was preserved in the trial court. *Id.* If it was, then reversal is required so long as the error caused "some harm." *Id.*

**B.    Analysis**

In the abstract portion of the self-defense instruction, the charge defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant." The charge's definition tracked the Penal Code's definition. PENAL § 1.07(a)(42) ("'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor."). Therefore, the charge accurately stated the law. *See, e.g.*, *Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979) (charge that defined "reasonable belief" in accordance with penal code "adequately presented" defendant's "defensive theory and protected her rights"); *Buford v. State*, 606 S.W.3d 363, 371 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding that charge "correctly defined reasonable belief as 'a belief that an ordinary and prudent person would have held in the same circumstances as the defendant'"); *Bundy v. State*, 280 S.W.3d 425, 431 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding no error when charge "tracked the standards and definitions relating to self defense, deadly force, and reasonable belief provided in the penal code"); *Garrett v. State*, No. 08-19-00024-CR, 2020 WL 4381609, at *8 (Tex. App.—El Paso July 31, 2020, pet. ref'd)

(not designated for publication) (holding that "the abstract portion of the jury charge correctly defined the term 'reasonable belief' to mean 'a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant'").

Vasquez nevertheless argues that the definition "conflicts with the law of self-defense and defense of third persons" because it requires the jury to judge the reasonableness of Vasquez's belief from the standpoint of an ordinary and prudent person in Vasquez's position, rather than from the standpoint of Vasquez himself. *See Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex. Crim. App. 1986) ("[T]he reasonableness of an accused's belief that unlawful deadly force is being exerted against him must be judged from the standpoint of the accused at the instant he responds to the attack." (emphasis omitted)); *but see also Valentine*, 587 S.W.2d at 400 (finding "no merit" in defendant's complaint that trial court "fail[ed] to instruct the jury that she had the right to defend against a reasonable apprehension of danger as viewed from her standpoint at the time of the offense"); *Garrett*, 2020 WL 4381609, at *6, 8 (when charge correctly defined "reasonable belief" in abstract portion of self-defense instruction, charge did not require further instruction in application portion that defendant "had the right to use deadly force against [the complainant] if she had a 'reasonable apprehension of danger as viewed from her standpoint at the time of the offense'").

21

Vasquez misunderstands the law of self-defense. Vasquez appears to believe that when a jury judges the reasonableness of a defendant's belief from the standpoint of the defendant himself, the jury determines whether the defendant actually believed the use of deadly force was immediately necessary. That is not what the jury does.

While the reasonableness of the defendant's belief "is *viewed* from the defendant's standpoint at the time he acted[,]" *Benavides v. State*, 992 S.W.2d 511, 521 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (emphasis added), it is "*measured* by the objective standard of an 'ordinary and prudent man[,]'" *Echavarria v. State*, 362 S.W.3d 148, 154 (Tex. App.—San Antonio 2011, pet. ref'd) (emphasis added). Viewing the reasonableness of the defendant's belief from the defendant's standpoint establishes what evidence the jury will consider. It requires the jury to ask, "What did the defendant know when he used deadly force?" The reasonably-prudent-person standard establishes how the jury weighs this evidence. It requires the jury to ask, "Based on what the defendant knew at the time, would a reasonable person have believed the use of deadly force was immediately necessary?"

The charge properly instructed the jury on these two aspects of its analysis. In the abstract portion, the charge defined "reasonable belief" and thereby established the standard by which the jury would measure Vasquez's belief that the use of deadly

22

force was immediately necessary. Then, in the application portion, the charge instructed the jury to view the evidence from the standpoint of Vasquez at the time of the offense and thereby established the evidence the jury would consider in determining whether Vasquez's belief met that standard.

We hold that the trial court did not err in submitting a self-defense instruction defining "reasonable belief" in accordance with the Penal Code. We overrule Vasquez's fourth issue.

## Conclusion

We affirm.

Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.

Do not publish.  TEX. R. APP. P. 47.2(b).