**AFFIRMED as MODIFIED and Opinion Filed May 9, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00155-CR**
_____

**MICHAEL RYAN WARNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1875393-Y**

# MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Garcia

A jury found appellant guilty of murder and assessed punishment at fifteen years in prison. In two issues, appellant now argues the trial court erred by (i) excluding his neuropsychologist's testimony during the guilt/innocence phase of trial, and (ii) denying his requested self-defense instruction concerning the use of deadly force to prevent a robbery. The State requests that we modify the judgment to reflect that appellant was convicted of murder under the influence of sudden passion pursuant to TEX. PENAL CODE ANN. § 19.02(d). We modify the judgment, and as modified, affirm.

# I.  Background

Desia Hopson used methamphetamine in a hotel room with Jason Rattie, Alejandro Albert, and Francisco Munoz. Hopson then told everyone to leave so that she could make some money.

Hopson had previously arranged to meet appellant in the hotel room to have sex with him for $100. But when appellant arrived, he did not tender the agreed amount. Hopson told appellant she would not have sex with him for less than $100.

Appellant became angry and began to physically and sexually assault Hopson. Hopson texted an SOS to Rattie. Albert, Rattie, and Munoz returned to the hotel. When they heard Hopson screaming, they tried to enter the room by beating on the locked door and by attempting to open the window.

Appellant opened the door and started to walk by the men. Rattie demanded that appellant turn over Hopson's money. Albert punched appellant in the face and knocked him down. While appellant was on the ground, he pulled out a handgun and Rattie, Albert, and Munoz turned to flee. Appellant fired a round and rose to his feet. He fired a second round in Albert's direction and a third round in Rattie's direction.

Rattie rolled under an SUV to hide and saw Munoz lying on the ground in the parking lot. Rattie and Hopson heard Munoz say something like "Please, please, I have kids, I have kids," before they heard gunshots. Appellant stood over Munoz as he lay on the ground and fired a fourth shot into Munoz's abdomen before fleeing the scene.

Munoz suffered two gunshot wounds. One bullet entered his back, and the other bullet entered his abdomen. The medical examiner found that these wounds caused Munoz's death.

Appellant was charged with Munoz's murder. At trial, he argued that he killed Munoz in self-defense and that Hopson and the three men planned to rob him.

After the State rested its case, the trial court conducted a *Daubert* hearing to consider defense counsel's request to have a neuropsychologist testify about appellant's below average brain processing speed. The trial court sustained the State's objection to the witness and excluded the testimony in the guilt/innocence phase.

The jury charge included instructions on self-defense and deadly force in defense of person and property. The trial court refused defense counsel's requested instruction concerning self-defense during the commission of a robbery. The jury found appellant guilty of murder.

The neuropsychologist testified during the punishment phase of trial. She explained the "fight or flight" response and opined that appellant was incapable of cool reflection after he was punched because he had a slower than average processing speed. The jury found that appellant was acting under the influence of "sudden passion," and assessed punishment at fifteen years in prison. The trial court entered judgment accordingly and this timely appeal followed.

## II. Analysis

**Excluding the Expert Witness**

Appellant's first issue argues the trial court abused its discretion by excluding the testimony of Dr. April Wiechmann, a neuropsychologist, during the guilt/innocence phase of trial because the testimony was relevant to the issue of self-defense. We review a trial court's decision to admit or exclude expert opinion testimony under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). Under this standard, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Expert testimony is admissible if (1) the witness qualifies as an expert by reason of his or her knowledge, skill, experience, training, or education; (2) the subject matter is one that is appropriate for expert testimony; and (3) admitting the expert testimony will help the factfinder in deciding the case. TEX. R. EVID. 702. As the proponent of the evidence, appellant was required to show that the expert's testimony was based on a reliable foundation and was relevant to the issues in the case. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

Pursuant to Rule 401 of the Texas Rules of Evidence, relevant evidence is that which has any tendency to make a fact of consequence to the determination of the case more or less probable than it would be without the evidence. TEX. R. EVID. 401(a)–(b). To be relevant, an expert's opinion must not only assist the trier of fact

in understanding the evidence or determining a fact in issue, but also be sufficiently tied to the facts of the case. *See* TEX. R. EVID. 702.

Expert testimony regarding a defendant's state of mind or intent has been held admissible in limited circumstances, including cases (1) involving the defense of insanity; (2) involving self-defense in a domestic violence situation; or (3) where such testimony may be relevant to rebut or disprove the defendant's culpable mens rea. *Dooley v. State*, 582 S.W.3d 309, 312 (Tex. App.—Fort Worth 2018, no pet) (collecting cases). However, under the third category, such evidence may be excluded if it does not truly negate the required mens rea. *Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008); *Mays v. State*, 318 S.W.3d 368, 381 (Tex. Crim. App. 2010) (stating mental illness testimony may be relevant during the punishment phase, but expert testimony that does not directly rebut the culpable mental state may usually be excluded at the guilt stage); *Dooley*, 582 S.W.3d at 313 (holding expert testimony did not negate defendant's mens rea but instead provided an excuse for his behavior).

During the *Daubert* hearing, Dr. Wiechmann testified that she performed an IQ test and a malingering test on appellant. The malingering test was administered to determine whether appellant was "faking" his IQ test results.[1]

---

[1] Although the question was never asked, it is reasonable to infer that Dr. Wiechmann believed there was no malingering and the IQ test was accurate.

One part of the IQ test showed that appellant had "below average" processing speed in the fourteenth percentile. This was consistent with his diagnosis of Attention Deficit Disorder and Autism Spectrum Disorder. Processing speed is "the amount of time it takes for information to come in, for a person to comprehend it, and then react to it." If a person's processing speed is slow, it will affect how quickly that person can process accurate information, which could lead to poor decisions.

Dr. Wiechmann testified about the version of events appellant relayed to her during his clinical interview. Appellant felt threatened when he was knocked to the ground and Dr. Wiechmann opined that his actions were consistent with someone in "fight or flight" mode. According to Dr. Wiechmann when appellant began to fear for his life, this "alarm" would not have subsided until appellant felt safe, which was likely not until well after leaving the scene. A person's "fight or flight" response will vary according to the individual. Appellant felt threatened from the time he was knocked to the ground until he drove off in his car.

A defendant's conduct is justified under a self-defense theory if he reasonably believed that deadly force was immediately necessary to protect himself from another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.31–.32. A "reasonable belief" is a belief that would be held by an ordinary prudent person under the same circumstances. *See* TEX. PENAL CODE ANN. § 1.07(42). "The 'reasonably believes' language contains objective and subjective components." *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021).

The mens rea for murder is either knowing or intentional. *See* TEX. PENAL CODE ANN. §19.02 (b) (1). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly . . . when he is aware of the nature of his conduct . . . [and] his conduct is reasonably certain to cause the result." *Id*. § 6.03(b). Nothing in Dr. Wiechmann's testimony negates or even addresses these mental states.

At most, Dr. Wiechmann's testimony explains why appellant subjectively believed that force was immediately necessary. But a defendant's subjective apprehension must nonetheless be objectively reasonable. *See Warner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986) (evidence only showed that defendant was not an ordinary and prudent man with respect to self-defense and defendant was not entitled "to an enlargement of the statutory defense on account of his psychological peculiarities."); *see also Oliver v. State*, No. 05-08-01057-CR, 2020 WL 4581644, at *17 (Tex. App.—Dallas Aug. 10, 2020, pet. dism'd) (mem. op., not designated for publication) (a defendant may act on circumstances as viewed from his own perception but the inquiry also incorporates the "ordinary prudent man" test from tort law); *Echavarria v. State*, 362 S.W.3d 148, 154 (Tex. App.—San Antonio 2011, pet. ref'd) (how a trained marine reacts not relevant to whether a reasonable person would have believed force was necessary).

Because the proffered testimony did not rebut or disprove the mens rea or assist the jury in determining whether appellant's use of deadly force was objectively reasonable, the trial court's decision to exclude the testimony from the guilt/innocence phase was not outside the zone of reasonable disagreement. *See Echavarria*, 362 S.W.3d at 154. We resolve appellant's first issue against him.

**Charge Error**

Appellant's second issue argues the trial court erred in refusing his requested self-defense instruction concerning the use of deadly force to prevent the imminent commission of a robbery. Specifically, during the charge conference, defense counsel argued that the deadly force language was incomplete and should also include language from TEX. PENAL CODE ANN. §9.32(a)(B) because "there was a demand for money [and] there was an assault, which constitutes robbery."

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *Arteaga v. State*, 521 S.W.3d 329, 333-34 (Tex. Crim. App. 2017). As the Court of Criminal Appeals has explained, "[a] defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Rogers v. State*, NO PD-0242-19, 2022 WL 14692354, at *3 (Tex. Crim. App. 2022). Conversely, however, if a law does not apply to a particular case, it should not be included in the jury charge. *Arteaga v. State*, 521 S.W.3d at 338.

In analyzing a potential jury charge error, we use a two-step review to determine whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). We first decide whether error exists in the charge. *Id*. at 744. If we determine an error exists, we next determine whether sufficient harm resulted from the error requiring reversal. *Id*. The level of harm necessary for reversal depends on whether the appellant properly objected to the error. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). If an appellant fails to preserve error, a charge error is reversible only if the error caused "egregious harm." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). When as here, an appellant preserves error, the error is reversible only if it caused some harm. *Id.* Under the "some harm" standard, "the presence of any harm, regardless of degree . . . is sufficient to require a reversal." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Both harm standards require the appellant to suffer actual, as opposed to theoretical, harm. *Id.*

The use of deadly force, when justified, is a defense to murder. *Gilbert v. State*, 575 S.W.3d 848, 863 (Tex. App.—Texarkana 2019, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter."); *id*. at §§ 9.31–9.32 (enumerating requirements for establishing claim of self-defense). Subject to certain exceptions, Section 9.31(a) of the Texas Penal Code, entitled "Self-Defense," provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the

force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). Section 9.32(a), entitled "Deadly Force in Defense of Person," further provides that "a person is justified in using deadly force against another":

> (1) if the actor would be justified in using force against the other under Section 9.31; and
>
> (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>
> (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or
>
> (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

*Id*. § 9.32(a) (1)-(2). The omission of subsection (B) is at issue here.

When a defendant is accused of murder, he is entitled to an instruction on the law on self-defense if he presents some evidence, even if contradicted, that he reasonably believed his use of force was immediately necessary to protect himself or a third party against his victim's unprovoked use or attempted use of unlawful force. *See, e.g., Gamino v. State*, 537 S.W.3d 507, 512 (Tex. Crim. App. 2017). In reviewing the denial of a requested self-defense instruction, we view the evidence in the light most favorable to the requested submission to determine whether evidence from any source will support the elements of the defense. *Id.*; *see also Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) ("[E]ven a

–10–

minimum quantity of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense.").

The State insists that appellant was not entitled to an instruction concerning the use of deadly force in response to the commission of a robbery because his attackers were fleeing, he shot Munoz a second time while Munoz was wounded on the ground, and because the testimony about whether anyone checked appellant's pockets when he was lying on the ground is inconclusive.

The State's argument, however, ignores that Rattie demanded that appellant turn over money when appellant first opened the door to the hotel room. Albert then punched appellant and knocked him to the ground. Appellant fired the first shot after this assault and demand for money. This evidence is sufficient to raise the "commission of a robbery" aspect of self-defense, and the jury should have been so instructed. *See generally, Krajovic*, 393 S.W.3d at 286.

Having concluded that refusal of the requested instruction was erroneous, we consider whether the error caused appellant some harm. When applying the "some harm" standard, a court must consider several factors, including the jury charge as a whole, the arguments of counsel, the entirety of the evidence, and any other relevant information in the record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Significantly, the self-defense issue was submitted to the jury, albeit without the requested language from section §9.32(a)(B) concerning prevention of the

imminent commission of a robbery. The self-defense instruction that was submitted included instructions on both self-defense and the defense of property. The jury found appellant guilty of murder, and by doing so, rejected his self-defense theory. Because the jury's negative finding on self-defense precluded the possibility that appellant was justified in using self-defense to prevent a robbery, the court's failure to include the "commission of a robbery" language was harmless. *See Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd) (harmless error to refuse defense of third person instruction because jury rejected self-defense); *Curtis v. State*, 754 S.W.2d 460, 462 (Tex. App.—Dallas 1988, writ ref'd) (same); *see also Chase v. State*, ___ S.W.3d___, No. 12-22-00167-CR, 2023 WL 3033196, at *3 (Tex. App.—Tyler Apr. 20, 2023, no pet. h.) (self-defense and necessity defenses overlapped so no harm in excluding necessity instruction); *Spoonable v. State*, No. 04-17-00817-CR, 2018 WL 6793527, at *7 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op. not designated for publication) (same).

Moreover, the charge also included apparent danger and multiple assailant language to instruct the jury on the circumstances in which appellant's belief that deadly force was necessary would be presumed reasonable. This presumption of

reasonableness instruction included a reference to robbery.[2] Specifically, the jury was instructed:

> The defendant's belief that deadly force was immediately necessary is presumed to be reasonable if the defendant:
>
> (1) Knew or had reason to believe that the person or persons against whom deadly force was used was . . .
>
> (c) committing or attempting to commit murder, robbery, and/or aggravated robbery.

By including the commission of a robbery language in the presumption of reasonableness instruction, the charge provided the jury with sufficient information to consider appellant's use of deadly force to prevent a robbery. Viewed as a whole, the charge supports a finding of no harm.

The evidence favoring the State was strong. The offense was captured on video and the video was played for the jury. Multiple witnesses heard Munoz plead for his life when appellant shot him the second time. And the medical examiner testified that the second shot to Munoz's abdomen was the fatal shot.

The closing arguments also weigh against a finding of harm. Both parties' arguments about burglary were within the context of the presumption of reasonableness (on which the jury was instructed). Defense counsel argued the presumption applied because appellant believed he was being robbed and "the law

---

[2] The trial court included the presumption of reasonableness instruction even though it found that appellant was engaging in criminal conduct. *See* TEX. PENAL CODE ANN. § 9.32(b)(3).

–13–

says you are entitled to use deadly force when you are being robbed." The State argued there was no reason to think a robbery was planned or committed, emphasizing that appellant went to the hotel room with a gun.

Having considered the entire jury charge, the state of the evidence, the arguments of counsel, and the jury's consideration and rejection of appellant's self-defense claim, we conclude the trial court's failure to instruct the jury on TEX. PENAL CODE ANN. §9.32(a)(B) was harmless. *See Reeves*, 420 S.W.3d at 816.

**Reforming the Judgment**

The State argues that we should reform the judgment to reflect that appellant was convicted of murder under the influence of sudden passion pursuant to TEX. PENAL CODE ANN. § 19.02(d). We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record reflects that appellant was convicted of murder under the influence of sudden passion pursuant to TEX. PENAL CODE ANN. § 19.02(d). We therefore sustain the State's cross-point and modify the judgment accordingly.

### III. Conclusion

Having resolved all of appellant's issues against him, we modify the judgment to reflect that appellant was convicted of murder under the influence of sudden passion pursuant to TEX. PENAL CODE ANN. § 19.02(d). As modified, the trial court's judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220155F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL RYAN WARNER,
Appellant

No. 05-22-00155-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 7, Dallas County, Texas
Trial Court Cause No. F-1875393-Y.
Opinion delivered by Justice Garcia.
Justices Reichek and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that appellant was convicted of murder under the influence of sudden passion pursuant to TEX. PENAL CODE ANN. § 19.02(d).
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered May 9, 2023